BRUCE CLAYTON HUFFMAN, APPELLANT, v. MUFFY N. HUFFMAN, APPELLEE.

441 N.W.2d 899

Filed June 30, 1989.   No. 88-902.

Gregory J. Beal, of Gregory J. Beal & Associates, P.C., for appellant.

Steven C. Smith, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Sometime before he filed an action for dissolution of marriage, Bruce Clayton Huffman lost the lease on ranchland used for his cattle operation in McPherson County, Nebraska. On August 11, 1987, Bruce Huffman commenced an action to dissolve his marriage with Muffy N. Huffman and filed his dissolution petition in the district court for Lincoln County, Nebraska, of which North Platte is the county seat. In his petition, Bruce Huffman alleged that he was "a resident of Lincoln County" and that he had been a Nebraska "resident" for at least 1 year before the dissolution petition was filed. See Neb. Rev. Stat. § 42-349 (Reissue 1988) (dissolution; action; conditions). In the petition, Bruce Huffman designated his address as Tryon, McPherson County, Nebraska. By her "Responsive Pleading and Cross-Petition," Muffy Huffman alleged that she was a resident of Dawes County, Nebraska, that she had been a Nebraska resident for the year preceding commencement of the action by Bruce Huffman, and that Bruce "is a resident of Lincoln County, Nebraska."

Huffmans and their lawyers appeared for trial in the district court for Lincoln County on March 28, 1988. At the conclusion of evidence, the court specifically found that "the Court has jurisdiction over the parties and the subject matter of this action," and entered a decree, reflecting dissolution of Huffmans' marriage and custody of the four Huffman children granted to Muffy Huffman, subject to Bruce Huffman's right to visit the children.

On July 28, 1988, Bruce Huffman filed his application to modify the dissolution decree and requested, among other things, that he be granted custody of the Huffman children. Muffy Huffman did not file any pleading directed to Bruce's application. (We do not imply that any pleading was required from Muffy Huffman; rather, we mention the pleadings at this point only as background for the hearing on Bruce's application.)

On September 21, 1988, only Bruce Huffman testified at the

modification hearing before the same judge who previously rendered judgment in the Huffman case and signed the dissolution decree. The hearing was abbreviated by the court's action reviewed in this appeal. During direct examination of Bruce Huffman concerning the change of circumstances alleged for modification of the decree, a recess was taken when Muffy Huffman became ill. When direct examination of Bruce Huffman was about to resume, the court entered the interrogation:

> THE COURT: Before we go on, the Petition for Dissolution shows your address as HC 85, Box 24 Tryon, Nebraska, which is a McPherson County address. Were you living in McPherson County at the time you filed this petition or in Lincoln County?

> MR. HUFFMAN: When I filed back in August or whatever it was I was living here in North Platte, that's why we filed it here.

> THE COURT: But it shows on the face of the petition a Tryon address, McPherson County.

> MR. HUFFMAN: That's where I was still getting my mail for sure. I was just living — I was staying with my grandparents here for the summer.

> THE COURT: Well, were you staying with them on a temporary basis, you mean?

> MR. HUFFMAN: Yeah, I was looking for a job.

> THE COURT: Where was your drivers' license issued from?

> MR. HUFFMAN: Probably still at McPherson.

> THE COURT: Were you registered to vote in McPherson County?

> MR. HUFFMAN: I'm sure I was.

The court then expressed its concern whether there was any jurisdiction for the dissolution decree. See Neb. Rev. Stat. § 42-348 (Reissue 1988) ("All proceedings [for dissolution of marriage] shall be brought in the district court of the county in which one of the parties resides.").

Direct examination of Bruce Huffman resumed:

> [Bruce Huffman's lawyer:] Where did you live at the time you filed this petition?

A. North Platte.

Q. At what address?

A. 220 James Avenue.

Q. And had you left your home in McPherson County?

A. Yes.

Q. Did you have any intent of returning to that home in McPherson County at that time?

A. No.

Q. And did you become employed here in North Platte and in Lincoln County, Nebraska?

A. For a short period of time with — I was collecting things for the NEBRASKAland Days Committee or something — collecting money or donations, that kind of thing.

Q. And then, did you reside here for several months at that same address in Lincoln County, Nebraska, before you went anywhere else?

A. From June through September.

. . . .

Q. At the time you filed this — this action, did you have any intent of living anywhere else other than in Lincoln County, Nebraska?

A. I didn't know where I was going to go. I was kind of in limbo, but — but I figured North Platte area would afford me, you know, the opportunities — maybe more opportunities than — until I did find something more suited to what I knew how to do.

Q. At the time you moved to North Platte and in Lincoln County, Nebraska, did you intend to remain here?

[Muffy Huffman's lawyer]: Objection, asked and answered.

THE COURT: Go ahead and answer.

A. I — did I intend to remain here? I didn't know for sure so I can't answer that, really.

Q. Well, did you have any immediate plans to move anywhere else?

A. No.

Q. Did you intend to remain here for the indefinite future?

A. Right.

Cross-examination included the following:

[Muffy Huffman's lawyer:] Mr. Huffman, now, before you left your residence, your home up in McPherson County near Tryon, had you lived there all your life?

[Bruce Huffman:] Yes.

. . . .

Q. Okay. And did you stay there [McPherson County] after she [Muffy Huffman] left?

A. I was back and forth but —

Q. Back and forth between your grandparents' place in North Platte and your home place in McPherson County?

A. It wasn't my home place. I didn't have a home there.

Q. Well, you lived there all your life?

A. But I was asked to leave and I did not have a home there, my home was here [North Platte, Lincoln County].

After the court had noted that "[t]he Court on its own motion raises the question of whether it had jurisdiction to enter a decree of dissolution," the court declined to receive further evidence concerning the merits of Bruce Huffman's modification application, took the jurisdictional question under advisement, and later entered an order which contained:

The Court finds that this matter is controlled by Small v. Small, 229 Neb. 344 (1988) "In comparing the repealed ch. 25, section 6, statute section 42-301, and the current section 42-348, it is apparent that the change of the word 'may' to 'shall' reinforces this court's prior determination that residency of one party in the county where the petition is filed is jurisdictional. The rule announced in Fletcher (Fletcher v. Fletcher, 182 Neb. 549, 156 N.W.2d 1 (1968)), is still valid. The district court for a county cannot acquire jurisdiction over dissolution proceedings unless one of the parties is a resident of that county at the time the original petition is filed."

This Court has no question that residency was not established by the Petitioner in this case. All of the indicias of residency point to McPherson County as the county of residence. There is no question that the Petitioner was temporarily domiciled within the county, but the question

is not domicile it is residence. There is no showing that the Petitioner intended to reside in Lincoln County. All evidence points to temporary situation in which the Petitioner traveled back and forth between Lincoln and McPherson County, never changed his drivers' license, never changed his voters' registration, never obtained his own place to live in Lincoln County, never obtained permanent employment in Lincoln County, and never formed an intention to live in Lincoln County. In answer to the Courts question "Well, were you staying with them on a temporary basis, you mean?" The Petitioner said "Yeah, I was looking for a job.".

The Court finds that the Petitioner was not a resident of Lincoln County at the time of the filing of the Petition in this case. There is no question that the Respondent was not a resident of Lincoln County at the time of the filing of this case. Therefore, the Court finds that it had no jurisdiction to enter the Decree of Dissolution in this case, that the Decree should be set aside and declared void, and that the case should be and is dismissed.

We have examined the "Rules of Practice For The Thirteenth Judicial District," the judicial district which includes Lincoln County, which court rules were filed with this court on January 10, 1988, and provide: "RULE NO. 1. TERM OF COURT There will be one term of Court in each county, to be set by the Court in December of the preceding year." We assume, therefore, that the judgment and decree dissolving Huffmans' marriage were rendered, entered, and vacated during the same term of court. A district court has discretionary inherent power to vacate or modify its judgment anytime during the term in which the judgment was rendered. *Fredericks v. Western Livestock Auction Co.*, 225 Neb. 211, 403 N.W.2d 377 (1987); *Gutchewsky v. Ready Mixed Concrete Co.*, 219 Neb. 803, 366 N.W.2d 751 (1985).

In his first assignment of error, Bruce Huffman claims that the district court erred in vacating its judgment and dissolution decree and dismissing the application for modification of the decree.

In an appeal involving an action for dissolution of marriage,

the Supreme Court's review of a trial court's judgment is de novo on the record to determine whether there has been an abuse of discretion by the trial judge, whose judgment will be upheld in the absence of an abuse of discretion. In such de novo review, when the evidence is in conflict, the Supreme Court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Ensrud v. Ensrud*, 230 Neb. 720, 433 N.W.2d 192 (1988); *Christen v. Christen*, 228 Neb. 268, 422 N.W.2d 92 (1988).

Therefore, the standard of review in an appeal concerning a jurisdictional issue in an action for dissolution of marriage is the same standard for appellate review of any other judgment in a dissolution action. Regarding a question of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under review. *In re Estate of Walker*, 224 Neb. 812, 402 N.W.2d 251 (1987); *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 383 N.W.2d 29 (1986).

In reference to subject matter jurisdiction under § 42-348 concerning a dissolution action, this court stated in *Small v. Small*, 229 Neb. 344, 347, 427 N.W.2d 42, 44 (1988): "The district court for a county cannot acquire jurisdiction over dissolution proceedings unless one of the parties is a resident of that county at the time the original petition is filed."

The word *residence* appears in Neb. Rev. Stat. § 42-349 (Reissue 1988), which in part provides:

No action for dissolution of marriage may be brought unless at least one of the parties has had actual residence in this state with a bona fide intention of making this state his permanent home for at least one year prior to the filing of the petition, or unless the marriage was solemnized in this state and either party has resided in this state from the time of marriage to filing the petition.

Construing § 42-349 in *Rector v. Rector*, 224 Neb. 800, 401 N.W.2d 167 (1987), we held that the residence requisite for subject matter jurisdiction, expressed in § 42-349, was a requirement that one of the parties to the dissolution action, who in *Rector* was the petitioner, must have a "bona fide domicile" in Nebraska for 1 year before commencement of a

dissolution action.

Thus, the Huffman appeal presents the question: In § 42-348, does the word *resides* refer to domicile or residence?

"To reside" and its corresponding noun *residence* are chameleon-like expressions, which take their color of meaning from the context in which they are found. Also, *domicile* and *residence* are not necessarily synonyms and are not always used interchangeably.

In *State v. Jones*, 202 Neb. 488, 492, 275 N.W.2d 851, 853 (1979), this court examined and recognized the distinction between *residence* and *domicile* and noted:

> " 'It is universally held that in order to acquire a domicile by choice, these essentials must concur: (1) Residence (bodily presence) in the new locality, and (2) an intention there to remain. In other words, there must be a concurrence of the fact and the intent, the factum and animus. Act and intent must, therefore, concur, and the absence of either of these thwarts the change [in domicile].
> . . .' "

Consequently, domicile is obtained only through a person's physical presence accompanied by the present intention to remain indefinitely at a location or site or by the present intention to make a location or site the person's permanent or fixed home. See, *Greenwood v. Hilderbrand*, 357 Pa. Super. 253, 515 A.2d 963 (1986); *Dane v. Board of Registrars of Voters of Concord*, 374 Mass. 152, 371 N.E.2d 1358 (1978); *Loudenslager Will*, 430 Pa. 33, 240 A.2d 477 (1968).

However, residence is the result of or achieved by a person's physical presence and living at a location and does not require an intention to stay permanently in the location. See, *San Patricio County v. Nueces County Hospital Dist.*, 721 S.W.2d 375 (Tex. App. 1986); *Boswell v. South Carolina Ins. Co.*, 353 Pa. Super. 108, 509 A.2d 358 (1986); *Wolinsky v. Bradford Nat. Bank*, 34 Bankr. 702 (Bankr. D. Vt. 1983); *In re Marriage of Weiss*, 87 Ill. App. 3d 643, 409 N.E.2d 329 (1980); *Smiley v. Davenport*, 139 Ga. App. 753, 229 S.E.2d 489 (1976).

We have noted the domiciliary requirement for filing a petition for dissolution of marriage. See, § 42-349; *Rector v. Rector, supra*. However, in dissolution actions, courts

frequently find one or both parties in the process of moving from one county to another. In today's mobile society, it is understandable that a spouse may leave the domiciliary county and relocate as the result of a broken marriage. We believe that the Legislature intended that § 42-348 must be construed to allow a spouse, who has otherwise satisfied the domicile requirements of § 42-349, to file a dissolution petition in the county where either spouse lives, although such spousal presence may be only temporary, rather than a statutory construction which restricts filing a dissolution action to the domiciliary county. Therefore, we hold that, if one of the parties to a dissolution action has had a Nebraska domicile for the duration prescribed by § 42-349, a party may commence a dissolution action under § 42-348 in the county where one of the parties lives and is not required to commence the action in the domiciliary county of either party to the dissolution action.

"A judicial abuse of discretion does not denote or imply improper motive, bad faith, or intentional wrong by a judge, but requires the reasons or rulings of a trial judge to be clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition through a judicial system."

*Newton v. Brown*, 222 Neb. 605, 617-18, 386 N.W.2d 424, 432 (1986). See, also, *Bump v. Firemens Ins. Co.*, 221 Neb. 678, 380 N.W.2d 268 (1986).

From our de novo review of the record, contrary to the conclusion reached by the district court, we find that Bruce Huffman's undisputed and unequivocal testimony established that the jurisdictional requirements for filing a dissolution action in the district court for Lincoln County had been fulfilled, and conclude that the judgment and dissolution decree in the Huffman case are valid. As a matter of law concerning jurisdiction, the district court erred in setting aside its previous judgment and decree concerning dissolution of the Huffman marriage. In view of the validity of the district court's previous judgment and dissolution decree, the district court's action unfairly deprived Bruce Huffman of the substantial right in the subsistence of the valid judgment and decree, which dissolved Huffmans' marriage. Setting aside the dissolution

decree also denied Bruce Huffman the opportunity to be heard on his application to modify the dissolution decree concerning custody of the Huffman children. The district court abused its discretion in vacating its previous and valid judgment and dissolution decree.

Consequently, we reverse the judgment of the district court, which set aside the district court's previous judgment and dissolution decree in Huffmans' case, and remand this matter to the district court with direction to reinstate its previous judgment and dissolution decree, which have been vacated. Also, we remand this matter to the district court with direction to reinstate the proceedings pursuant to Bruce Huffman's application for modification of the dissolution decree and further direct the district court to resume the hearing on the merits of the modification application.

Bruce Huffman's second assignment of error relates to the district court's exclusion of Bruce's testimony concerning Muffy Huffman's cohabitation with a man named Bob Gregg and the effect of such relationship on the "emotional health" of the Huffman children. As the result of an objection based on lack of Bruce Huffman's qualification to express the indicated opinion, see Neb. Evid. Rules 701 et seq. (opinion and expert testimony) (Neb. Rev. Stat. §§ 27-701 et seq. (Reissue 1985)), the district court excluded Bruce Huffman's opinion testimony. Although Bruce Huffman asks us to decide whether the district court's exclusionary ruling is correct, we decline to reach the evidential question. The district court did not .determine whether the modification application was meritorious and, thus, has not decided whether the dissolution decree should be modified. At this juncture in the Huffman case, because there has been no judicial decision regarding the merits of Bruce Huffman's request for modification of the dissolution decree, the exclusionary ruling by the district court has not adversely or prejudicially affected a substantial right of Bruce Huffman. See Neb. Evid. R. 103(1) (Neb. Rev. Stat. § 27-103(1) (Reissue 1985)). Our evaluation of the district court's ruling on the evidential question presently raised by Bruce Huffman would, therefore, be only an advisory opinion in an action wherein there is, as yet, no final judgment on the merits of Bruce

Huffman's modification application.

REVERSED AND REMANDED WITH DIRECTIONS.